Rollie *v.* State.

5085                                        370 S. W. 2d 188

Opinion delivered September 9, 1963.

*A. M. Coates,* for appellant.

*Bruce Bennett,* Atty. General, By *Jerry L. Patterson,* Asst. Atty. Gen., for appellee.

Frank Holt, Associate Justice. The appellant was accused of the crimes of forgery and uttering in two separate informations which were consolidated for trial. The jury acquitted her in one case and convicted her in the other in which they assessed her punishment at two years in the State Penitentiary for forgery and another two years for uttering. From this jury verdict and the judgment of the Court the appellant brings this appeal.

The appellant alleges five assignments of error in her motion for a new trial. We group the first three assignments inasmuch as they question the sufficiency

of the evidence. On appeal all the evidence submitted at the trial must be viewed in the light most favorable to a jury verdict and if there is any substantial evidence to support the verdict it is our duty to sustain it. *Ashcraft* v. *State,* 208 Ark. 1089, 189 S. W. 2d 374; *Smith* v. *State,* 222 Ark. 650, 262 S. W. 2d 272.

The witness to whom it is alleged the defendant presented the questioned check testified that she had seen the defendant before and that she observed the appellant, Alma Rollie, endorse the name ''Vera Mae Wilson'' on the check when the appellant made a purchase, receiving therefor certain articles and the balance in cash; that the appellant was in the store some fifteen to twenty minutes; that approximately fifteen minutes after the appellant left the store and after it was learned that possibly the crime of forgery and uttering had been committed she went out on the street and discovered the appellant and brought her back in the store, the appellant still having in her possession the purchased articles and some cash. The individual whose name was signed as the drawer of the check testified that it was not her signature and she had issued no such check. Vera Mae Wilson, whose name appeared on the check as the drawee, testified that she had received no such check, was due no such check and that she did not endorse it. The State also offered other evidence which is unnecessary to detail here. The appellant denied the accusations and contended that she knew nothing about it, thus presenting a question of fact for the determination of the jury. The evidence adduced in this case is not only sufficient but more than ample to support the verdict.

The appellant contends that the Court committed error in refusing to permit John Moye, Jr., a witness for the defendant, to testify that based upon his twenty-eight years experience in the banking business and being familiar with comparison of signatures, that in his opinion, after studying the endorsement and appellant's known handwriting, the appellant did not endorse the check in question. The general rule is well stated in 20 Am. Jur., Evidence, § 842, p. 706 as follows:

"There is no test by which one can determine with precision how much experience or knowledge of handwriting a witness must have in order to qualify as an expert for comparison. This problem is, generally speaking, left to the discretion of the trial court whose ruling thereupon is not reviewable in the absence of an abuse of that discretion.

It is not essential to qualify one as an expert to testify to comparisons of handwritings that he have professional knowledge or that he has made such work a specialty. It is enough that he has been engaged in some business which calls for *frequent comparisons of handwritings* and that he has in fact been in the habit for a length of time of making such comparisons. Bank tellers and other bank officers and employees whose daily business and duties compel them to scrutinize and examine writings are competent experts respecting handwriting. * * *." [Emphasis added.]

In view of Mr. Moye's twenty-eight years of experience in the field of banking, during which time it appears he made frequent comparison of signatures, we perceive no reason why he would not be qualified to express his opinion on the subject of handwriting. However, in this case the appellant never offered sufficient proof to the Court that indicates she was prejudiced by the ruling of the Court. In answer to a question by appellant's counsel and the Court if he was "able to tell whether the endorsement "Vera Mae Wilson" on the check was in the same handwriting as the known handwriting of the appellant, Mr. Moye replied that he could not do so. Therefore, we think there was no abuse of discretion by the Trial Court in the ruling on this point.

The most serious question presented to us is the alleged error of the Court in not declaring a mistrial based upon the following occurrence which we must consider to be prejudicial and reversible error. After the jury retired to consider its verdict, one of the jurors left the jury room and came into the court room alone, the other eleven members of the panel remaining in the

jury room. The Bill of Exceptions contains the following statement by the Court:

"In the first place, Mr. Ladd asked the Court about the form of the verdict and said if they voted to find her guilty on two counts and not guilty on two counts would that mean the same as one four year sentence and the Court advised him that it would. Whereupon, said juror returned to the jury room and soon thereafter the jury returned its verdict. The motion is overruled."

Ark. Stat. Ann. § 43-2139 (1947) provides:

"*After the jury retires for deliberation,* if there is a disagreement between them as to any part of the evidence, or *if they desire to be informed on a point of law, they must* require the officer to conduct *them* into court. *Upon their* being brought into court, the information required *must be given* in the presence of, or after notice to, the counsel of the parties." [Emphasis added.]

This statute requires in unambiguous language that the entire jury and no less a number thereof must be present before the Court and counsel for the parties, or notice given to counsel, upon any proceeding affecting the rights of the defendant or the State as defined in this statute. Its provisions are mandatory. In the instant case it is undisputed that the entire membership of the jury was not in the presence of the Court nor the defendant or her counsel when this juror sought the advice of the Court in the manner so stated by the Trial Judge in his characteristic fairness.

In *Aydelotte* v. *State,* 177 Ark. 595, 281 S. W. 369, we said:

"The most serious question in this case is whether or not the court erred in telling the foreman of the jury in the hall of the courthouse, apart from his fellows, in answer to a question propounded to the judge by the foreman, that the jury could give less than one year for the lowest degree of homicide according to the instruction twice given to the jury. If this were all the record showed, it would undoubtedly be reversible error because contrary to § 3192, C. & M. Digest [Ark. Stat. 43-

2139] * * *. *The provisions of the above statute are mandatory, and where the facts call for an application of its provisions, unless the rulings of the court comply with the statute, they will constitute prejudicial error."* [Emphasis added.]

However, in this case it was held that the manifest error was corrected by the Court when it repeated the communication in the presence of the entire jury and counsel in the court room before the verdict was received and after the Court ascertained if the occurrence had exerted any influence on their verdict. *Bell* v. *State,* 223 Ark. 304, 265 S. W. 2d 709; *Hopkins* v. *State,* 174 Ark. 391, 295 S. W. 36; *Hinson* v. *State,* 133 Ark. 149, 201 S. W. 811; *Wacaster* v. *State,* 172 Ark. 983, 291 S. W. 85.

The State contends the record or Bill of Exceptions does not disclose that any objection and exception was made by appellant to this procedure until after the jury was discharged and sentence was pronounced and, therefore, appellant is precluded from raising this point in her motion for a new trial. This is the general rule, however, there are exceptions. This point was specifically and thoroughly considered in the more recent case of *Bell* v. *State, supra.* In that case we held that the defendant did not waive an alleged error similar to the one in this case and, therefore, could properly raise it for the first time in a motion for a new trial.

Reversed and remanded.