PATRICK L. ANDREWS *v.* STATE OF ARKANSAS

5623                                      472 S.W. 2d 86

Opinion delivered November 1, 1971

*A. A. Thomason* and *Byron Thomason,* for appellant.

*Ray Thornton,* Attorney General; *Gene O'Daniel,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Patrick L. Andrews, appellant herein, was charged by the prosecuting attorney of the Thirteenth Judicial Circuit with the crime of murder in the first degree. On trial, he was convicted of murder in the second degree and the jury fixed his punishment at 21 years in the Department of Correction. From the judgment so entered, appellant brings this appeal. For reversal, it is first argued that the court committed reversible error by explaining to the jury foreman the length of time that the defendant would be required to stay in the Arkansas Department of Correction under possible verdicts in the case, this occurring before the jury had reached a verdict as to the defendant's degree of guilt. It is also argued that the court committed reversible error by giving lengthy oral instructions to the jury foreman in the absence of the remaining members of the jury to such extent that such instructions could not be accurately related to the absent members of the jury. We first discuss the second contention.

The record reflects that after the jury had retired, the foreman returned to the courtroom and asked a question of the court. The transcript reflects the following:

"THE COURT: Let the record reflect that the foreman of the jury has approached the bench, and in the presence of the attorneys for the State and for the defendant, has requested to know in case this defendant received a number of years in the Department of Correction, when he would be eligible for parole, and also if he was given life? Is that a true and accurate statement of your question?

FOREMAN OF THE JURY: Right.

THE COURT: Commencing first with the number of years I could not have given you this answer unless you had inquired specifically by question as to the term of years, and specifically dealing with that which is less than first degree. Under Act 50 of the State of Arkansas a defendant sentenced for a term of years is eligible to make parole after he has served one third of his sentence less statutory good time that he might earn,

and if the sentence is over five years he may be given an opportunity of earning twelve days per month, in that sentence in excess of five years off of the term, and that portion of the sentence under five years he will be given an opportunity to earn as much as eight days per month statutory good time. In addition to that he is given the opportunity of also earning what is known as meritorious good time of five days per month off of the sentence. Now the Act of 1969 provides that he must serve one third of his sentence, less that which he had earned for statutory good time and meritorious good time, conditioned on the recommendations of the prosecuting attorney, of the circuit judge, and the sheriff. Does that answer that question for those sentences for a term of years?

THE FOREMAN: Yes, on that one.

THE COURT: Now as to the sentence of first degree murder for life, Act 50 provided originally that life shall be computed to be fifteen years and you could earn not more than five years good time, or you couldn't get out less than ten years. In 1969 that was amended, and the law today is that life shall be considered to be life, unless commuted by the governor for a term of years, and when commuted by the governor for a term of years it would be treated in like manner as I have just indicated to you for a sentence for a term of years. Does that answer the question?

THE FOREMAN: Yes, sir.

THE COURT: Any objection on behalf of the defendant or the state?

MR. THOMASON: I would like to lodge my objection to that.

THE COURT: What is the objection, sir?

MR. THOMASON: Well, basically the objection is Your Honor that I don't think that at this period of

time that the term of years should be explained or enter into the deliberation or consideration.

THE COURT: All right. Let that objection be overruled. I might say this that under the Arkansas law by case decision that is true and a Court could not instruct the juries otherwise, but when a jury comes out and requests this specific information, under the case decision it becomes the duty of the Court to so instruct them. Let the objection of the defendant be overruled to which he saves his exceptions."

After a thorough study of the statute and our cases, we have come to the conclusion that the judgment should be reversed on this count, but in making this determination, we think it only fair to state that no fault should be attached to the learned Circuit Judge because of the ruling rendered. Our cases are somewhat in conflict, and the distinctions drawn in instances where cases have been affirmed, and other cases reversed, are confusing and difficult to follow.

For instance, in *Wacaster v. State,* 172 Ark. 983, 291 S. W. 85, the trial court answered a question propounded by the jury foreman in the hall outside the jury room, and away from the presence of defendant and his attorneys, the question relating to the likelihood of a parole in the case under consideration. The answer given by the court was proper but the judgment was reversed by this court because the judge's action was in conflict with § 3192 Crawford & Moses' Digest, the court holding the provisions to be mandatory. It might be here stated that the statute mentioned is the same as our present statute, Ark. Stat. Ann. § 43-2139 (Repl. 1964).[1] This reversal was entered despite the fact that jurors testified after the rendering of the verdict, that they had already reached a verdict of guilty before the communication was received.

---

[1]"43-2139. After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the counsel of the parties."

In *Aydelotte* v. *State,* 177 Ark. 595, 281 S. W. 369, a different result was reached. From the opinion:

"After the jury retires for deliberation, if there is a disagreement between them as to any part of the evidence, or if they desire to be informed on a point of law, they must require the officer to conduct them into court. Upon their being brought into court the information required must be given in the presence of, or after notice to, the counsel of the parties. The provisions of the above statute are mandatory, and where the facts call for an application of its provisions, unless the rulings of the court comply with the statute, they will constitute prejudicial error. The design of the lawmakers in the enactment of this statute was to protect defendants on trial as well as the state, after causes have been finally submitted to the jury for its deliberation and verdict, against any further steps being taken in the case in regard to the evidence or the law unless in open court and after notice to the counsel of the respective parties. While the records show that the communication between the foreman of the jury and the trial judge occurred in the hall of the courthouse, yet the record further shows that appellant's counsel was standing within thirty feet of the judge and the foreman of the jury at the time, and, immediately after the communication, the judge informed appellant's counsel of such communication. The counsel stated to the judge it was all right, but he wished to save his formal exceptions. Even this would not have been a compliance with the statute if nothing further had been done, but, after the jury had returned into court with its verdict, and before the court had received the same, the court informed the jury of the communication that the judge had with the foreman, and inquired of them if such was their understanding of what had happened and asked them if the conduct of the judge and the foreman had exerted any influence on them in reaching their verdict, and they answered that it had not. Thus it appears that the communication between the judge and the foreman of the jury was repeated in the presence of the jury and counsel in the court room before the verdict was received and announced. Counsel for the respective parties were thus

notified of what had taken place, and what was then taking place, in open court, and they were then given an opportunity to register any objection they had or might have had to the procedure, and they offered none."

A similar holding was rendered in *Smith* v. *State,* 194 Ark. 264, 106 S. W. 2d 1019 (1937), where a single juror requested the sheriff to permit him to leave the remaining eleven and go into the courtroom to see the court. The sheriff granted permission and the juror walked up to the bench where the judge was sitting and talked with him. Following the conversation, the court permitted the juror to return to the jury room. This action was observed by an attorney named Walker. The opinion then recites:

'Mr. Walker is a partner in the firm of Shouse & Walker, and while the testimony shows that he did not actively participate in the trial, yet it is admitted that he sat at the counsel table with the other attorneys for appellant, assisted in selecting the jury, and the court and prosecuting attorney evidently regarded him as one of appellant's attorneys. He saw the juror in the court room, made some remark about it, and asked what it was about. He did not request that the entire jury be brought in, and the conversation repeated in their presence. This request was not made at any time by appellant's attorneys. The testimony of all the jurors shows that nothing occurred at any time after they were elected as jurors to influence them in any way. There was no communication between them or any one of them and outside persons. There is in fact no claim made by the appellant that anything was done or said at any time to influence their verdict. It is only contended that the sheriff, permitting one juror to separate from the others and go into the court room, violated the statute, and for this reason it is urged that the judgment should be reversed. * * * * It is true that the statute was enacted to protect the defendant on trial and the trial court should be extremely cautious not to permit anything to be done to prejudice the defendant. If the jurors are permitted to separate and one of them communicates with the court and the court gives any instruction, the pre-

sumption would be that it would be prejudicial. However, this court has stated that this error may be waived either by the defendant or his attorney."

This court thus, in effect, held that the failure of the attorney to make the requests just mentioned, operated as a waiver. The court then said:

"This court has uniformly held that it is not necessary for the accused to show that he was actually prejudiced by the ruling of the court in his absence. However, we recently said:

'But we have, also, uniformly held that a cause will not be reversed where a ruling is made by the trial court in the absence of the defendant that could not by any possibility result in his prejudice.' The court, also, said, quoting from *Mabry* v. *State,* 50 Ark. 492, 8 S. W. 823: 'We do not depart from the rule that the probability of prejudice by an order made in the absence of the defendant prosecuted for a felony, is all that need be shown to reverse a judgment of conviction, but adhere to its corollary, that we will not reverse for that cause when it is plain the defendant has lost no advantage by his absence.' *Whittaker* v. *State,* 173 Ark. 1172, 294 S. W. 397.

It is plain from the record in this case that appellant was not in any way prejudiced, and the judgment is, therefore, affirmed."

A contrary conclusion was reached in *Bell* v. *State,* 223 Ark. 304, 265 S. W. 2d 709. There, the court went to the door of the jury room, the sheriff not being available, and inquired if the jury wanted to go to lunch or wanted the judge to keep himself available during the noon hour to receive their verdict. As he left one of the jurors asked him a question and the court, on the spur of the moment, answered. The court then returned to the courtroom and informed counsel for the defendant fully as to what had occurred. No motion for a mistrial was made at the time but the matter was included in the motion for a new trial but was overruled. This court then quoted the first part of the statute and pointed

out that in *Wacaster* v. *State supra,* we had held the provisions of such statute mandatory. The state insisted that any error that might have been committed by the trial court was waived by the defendant and his counsel because the judge immediately returned to the courtroom and informed counsel for the defendant fully as to what had occurred, but no objection was made. It was contended that in the absence of an objection the error could not be considered, but in holding contrary to that contention we said:

"The judge, having committed the error, should have corrected it on his own motion, and the accused was not obligated to make a formal objection because the error had already been committed, and an objection could not have erased the damage that had been done."

Our most recent case on this subject is *Rollie* v. *State,* 236 Ark. 853, 370 S. W. 2d 188 (1963). There, a juror left the jury room after they had retired to consider the verdict and sought advice of the court as to the form of the verdict out of the presence of the remaining jurors, the defendant and her counsel not being present. The Bill of Exceptions contained the following statement by the court:

"In the first place, Mr. Ladd asked the Court about the form of the verdict and said if they voted to find her guilty on two counts and not guilty on two counts would that mean the same as one four year sentence and the Court advised him that it would. Whereupon, said juror returned to the jury room and soon thereafter the jury returned its verdict. The motion is overruled."

In reversing the judgment, we quoted the statute (identical with 43-2139), and also in effect at the time of *Aydelotte.* We then said:

"The State contends the record or Bill of Exceptions does not disclose that any objection and exception was made by appellant to this procedure until after the jury was discharged and sentence was pronounced and, therefore, appellant is precluded from raising this point in

her motion for a new trial. This is the general rule, however, there are exceptions. This point was specifically and thoroughly considered in the more recent case of *Bell* v. *State supra.* In that case we held that the defendant did not waive an alleged error similar to the one in this case and, therefore, could properly raise it for the first time in a motion for a new trial."

The facts in the present case have some, but not all of, the elements in the cases cited. For instance, in *Smith,* this court held that the court's error was waived by the defense because no request was made that the entire jury be brought in, and the conversation repeated in their presence; however, the affirmance seems to be mainly based on a finding that the record clearly reflected that there was no prejudice. In *Aydelotte,* the communication between the court and foreman of the jury was said not to have been prejudicial where the court informed the entire jury of the entire conversation that the judge had with the foreman and inquired if that was their understanding of what had happened; they were also asked whether this communication had exerted any influence on them in reaching their verdict. To this question, the entire jury answered in the negative. In addition, no objections were registered to this procedure.

In the case before us, the procedure was somewhat different, though the record reflects that the court did mention to the jury when they returned to render a verdict that it had been asked by the foreman when the defendant might be released. It seems clear that the entire conversation with the foreman was not repeated, and it was a lengthy conversation. Counsel did object, but his objection did not go specifically to the fact that the court was only talking to the foreman rather than the entire jury. In *Bell* and *Rollie,* we held the court's communication prejudicial error, though there was no objection and the point was only raised in a motion for a new trial.

It is apparent that the cases are not harmonious and the holdings lack consistency though the more recent cases hold such action by the trial court to constitute error. We think this is the better holding, for

where answers are given to only óne member of the jury, and he in turn reports that answer to the other jurors, there is a great opportunity for misconstruction. After all, the juror is not a lawyer and, though honestly and conscientiously endeavoring to convey to the other jurors the answer of the court, will necessarily only give his interpretation of what was said; this interpretation may be erroneous. Of course, it is also possible that the single juror might not hear correctly everything the court said. Accordingly, we have reached the conclusion that the statute, Ark. Stat. Ann. § 43-2139. (Repl. 1964), should be strictly followed. In *Wacaster* we did reverse because of the court's conversation with the foreman, but in *Aydelotte,* though holding on the one hand that the provisions were mandatory, we proceeded to say, in effect, that the statute was *not* mandatory, for we affirmed even though the provisions were violated. We now repeat that following the statute is mandatory in the full meaning of the word, defined by The American Heritage Dictionary of the English Language as "Required as if by mandate; obligatory". Obligatory is then defined as "legally or morally constraining; binding * * * compulsory".

Turning now to the other point, *viz,* that the court committed reversible error by explaining the length of time that the appellant would be required to serve under possible verdicts in the case, we quickly point out that the court's statement was in accord with our cases. We have said numerous times that a court can properly tell the jury the law, but cannot give an opinion or base a statement on hearsay. See *Bell* v. *State supra,* where this court said:

"In some cases the Trial Judge has told the Jury the *law* as to paroles; and that course of procedure has been approved. See *Glover* v. *State,* 211 Ark. 1002, 204 S. W. 2d 373; and *Pendleton* v. *State,* 211 Ark. 1054, 204 S. W. 2d 559. But in the case at bar, the answers made by the Trial Judge to the Juror's questions—admittedly made on the 'spur of the moment'—were not declarations of law that a Judge could make from the bench; rather the answers were testimony as to the Judge's per-

sonal observations and hearsay evidence as to the length of time some convicts stay incarcerated."

In the instant case, the court simply answered the question of the foreman by setting out the law as found in Ark. Stat. Ann. § 43-2807 (Supp. 1969). The summarization was correct, and accordingly no error was committed, and we would not reverse because of the court's action. However, inasmuch as this judgment is being reversed anyway, we are of the unanimous view that this is a proper time to stabilize the procedure. In dozens of cases, juries have propounded this question to the court, and the answers have varied. So long as the court confined the reply to the law, we held that no error was committed, but we have reached the conclusion that this procedure should not be followed longer. It clearly appears that the preponderance of jurisdictions do not permit information concerning paroles or parole time to be given to the jury,[2] and even in those jurisdictions where an answer is made similar to the answer in the present litigation, the trial court is further required to tell the jury that the matter is one with which they need not be concerned. This is certainly not a question, the answer to which must be known, before the members of the jury can discharge their duty. Their duty is to determine, within the limits of the statute, the punishment that should be meted out for the crime that has been committed, and such judgment should not be influenced by any event that might occur at some time in the future. The subject matter is entirely alien to a judicial proceeding since it is handled entirely by another department of government, the executive.

What, after all, is the purpose, or reason, for the jury to inquire how long one must serve before he is eligible for parole? The only reason that a jury desires this information is to set the punishment for a sufficient term that will require the defendant to serve the amount of time that the jury really thinks he should serve as punishment. As an example, if the jury feels that the defendant should serve five years, but has been ad-

[2] See 35 ALR 2d 769.

vised that he will be eligible to be paroled within one-third of that time, (one year eight months), the defendant might be given a fifteen year penalty, the jury concluding that he will serve five years, the proper punishment that he should receive. This feeling of the jury is entirely understandable, but in arriving at such a verdict, the jury has gone far afield from its proper purpose and prerogative. Accordingly, we have concluded that this information should not be given the jury, and when asked for such information, the court should reply, in effect, that it is improper for the court to answer the inquiry, and an answer might well constitute reversible error; that the jury need not concern itself with the matter; that the control of the parole system is committed by law to the legislative and executive branches of the government, and, that the jury, if reaching a verdict of guilty, has only the duty of imposing such punishment as may be considered, under the court's previous instructions, to be appropriate.

We recognize that appeals may presently be pending where the court, in following previous opinions, may have violated the present admonition. We therefore state that the matter last discussed in this opinion, being only a matter of procedure, shall not be retroactive, but shall become effective when this opinion becomes final.

Because of the error committed, as set out in the first point discussed, the judgment is reversed, and the cause is remanded.

It is so ordered.